STATE OF WEST VIRGINIA

*v.*

METRO DUDICK

(No. 13486)

Decided March 25, 1975.

*Wilson Frame & Rowe, Clark B. Frame and Richard E. Rowe* for plaintiff in error.

*Chauncey H. Browning, Attorney General, Richard E. Hardison, Deputy Attorney General, Betty L. Caplan, Assistant Attorney General* for defendant in error.

NEELY, JUSTICE:

We have long been concerned in the administration of criminal law with the inevitable tension inherent in the competing goals of providing the accused with fair disclosure of evidentiary material relied upon by the State and, on the other hand, of protecting the State from illegal tampering with evidence. The great weight of authority in both the federal and state courts rejects

application of the liberal rules of discovery available in civil litigation to the criminal process and this Court is in agreement with that philosophy. Therefore guidelines with regard to discovery, including the proper exercise of trial court discretion, must be developed which reconcile competing needs and are fair to both defendant and State.

The case before us provides an opportunity to examine one facet of the overall problem, namely the rules which are applicable in West Virginia with regard to a defendant's right to examine police reports and other investigative memoranda upon which state witnesses rely to refresh their recollection during the course of a trial. In addition, this case permits us to consider two other important issues in modern criminal law, namely the necessary extent of independent examination into probable cause by a magistrate before he may issue a valid search warrant, and the elements of proof required to demonstrate "possession" of a controlled substance, as that term is used in the penal law.

The defendant, Metro Dudick, was a student at West Virginia University and paid one-third of the rent for an apartment at 487 High Street in the City of Morgantown. On February 26, 1973 a Morgantown city policeman, J. A. McCabe, appeared before a justice of the peace and presented an affidavit in support of a request for a search warrant to search the apartment on High Street. Having obtained the warrant, several officers of both the City and State Police went to 487 High Street at approximately 8:00 p.m. where they found the defendant and another young man. The officers presented the warrant and searched the premises where they uncovered and seized a quantity of marijuana. In April 1973 the defendant was indicted for possession of a controlled substance.

One mistrial was declared in June 1973 because the jury could not reach a verdict. The defendant's second trial, in which he was convicted of possession of a con-

trolled substance, was held in October 1973, at which time the State presented two witnesses, Officer J. A. McCabe and Trooper J. G. Watson. Officer McCabe testified that in executing the search warrant at defendant's apartment, he smelled a strong odor of burning marijuana and that a cigarette was discovered burning in an ashtray. On cross-examination he stated that this cigarette was confiscated in the search, analyzed in Charleston, and determined to be marijuana. His testimony in this regard was in direct conflict with the official police report which showed that the analysis of the contents of the ashtray revealed no finding of marijuana. Defendant made a timely motion during Officer McCabe's testimony to inspect the police report, which was used by the two officers for the purpose of refreshing their recollections, but this motion was denied. Later defendant's counsel was granted informal permission to read the official police report and he discovered that, according to the report, the officer's testimony was inaccurate. Defendant's counsel appended an affidavit regarding the discrepancy to the motion for a new trial, but the motion was denied.

## I

The Court holds that the trial court's refusal to permit defense counsel to inspect the police report was reversible error, although in West Virginia there is scant authority for that proposition. In the case of *State v. West*, ____ W. Va. ____, 200 S.E.2d 859 (1973) this Court held in syllabus point 4:

> "Where a witness takes lengthy notes to the witness stand from which he selects a few portions for the purpose of refreshing his recollection, it is not error for the trial court to restrict opposing counsel's inspection of the notes to those portions of the notes actually used by the witness."

This would appear to be converse of the proposition currently before us. In *West* a witness testified about a conversation he heard between the defendant and an-

other party. The witness used notes to refresh his memory, and on cross-examination defense counsel asked to see all the notes. The State moved the court to restrict the defendant's examination of the notes to those portions actually used by the witness to refresh his memory. The court granted the State's motion to restrict the examination, although later defense counsel was permitted to read all the notes in chambers. This Court found no error in that procedure. The *West* case properly applied the law to the facts of that case, although it would appear that the issue of discovery was treated tangentially by this Court as the lower court decision was reversed on other grounds.

While there is conflicting precedent throughout American jurisdictions, this Court finds the better rule on the subject of examination of notes used by witnesses during trial to be articulated in a variety of federal precedent, namely, *Jencks v. United States*, 353 U.S. 657, (1957); the statutory codification of the rule in *Jencks*, known as the *Jencks Act*, 18 U.S.C. § 3500; the *Federal Rules of Criminal Procedure*, Rule 16, 18 U.S.C.A.; and the new *Federal Rules of Evidence*, Public Law 93-595, 28 U.S.C. App., Rule 612. In *Jencks v. United States* the Government offered testimony by two F.B.I. undercover agents who stated on cross-examination that they had made regular oral or written reports to their superiors on the matters about which they had testified. Defendant moved for the production of these reports for inspection by the judge with a view to their possible use by the defendant in impeaching the agents' testimony. The United States Supreme Court held that denial of the motion for production was reversible error, and that defendant was entitled to an order directing the Government to produce for inspection after the Government's witnesses had testified, all written reports of the F.B.I. agents in the Government's possession, and also any oral reports as recorded by the F.B.I., touching the events and activities about which the agents testified at the trial. *Jencks* did not announce a constitutional rule,

but rather created a federal procedural rule upon which Congress chose to elaborate in the *Jencks Act*, (1957) as amended 1970.[1] The new *Federal Rules of Evidence*,

---

[1] 18 U.S.C. § 3500 says:
"DEMANDS FOR PRODUCTION OF STATEMENTS AND REPORTS OF WITNESSES:

"(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of supoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

"(b) After a witness called by the United States has testified on direct examination, the court shall on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

"(c) If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use. If, pursuant to such procedure, any portion of such statement is withheld from the defendant and the defendant objects to such withholding, and the trial is continued to an adjudication of the guilt of the defendant, the entire text of such statement shall be preserved by the United States and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge. Whenever any statement is delivered to a defendant pursuant to this section, the court in its discretion, upon application of said defendant, may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial.

"(d) If the United States elects not to comply with an order of the court under subsection (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the

which will become effective July 1, 1975, recognize the *Jencks Act* and specifically incorporate segments of the *Act* in Rule 612.[2]

Historically discovery in criminal cases has been largely within the discretion of the trial judge, *State v. Cowan*, W. Va., 197 S.E.2d 641 (1973), except with regard to any matter known to the prosecution which is obviously exculpatory in nature or which may be relevant

testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interest of justice require that a mistrial be declared.

"(e) The term 'statement', as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

"(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

"(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

"(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury."

[2] Rule 612. Writing Used To Refresh Memory

"Except as otherwise provided in criminal proceedings by section 3500 of title 18, United States Code, if a witness uses a writing to refresh his memory for the purpose of testifying, either—

(1) while testifying, or

(2) before testifying, if the court in its discretion determines it is necessary in the interests of justice,

an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal. If a writing is not produced or delivered pursuant to order under this rule, the court shall make any order justice requires, except that in criminal cases when the prosecution elects not to comply, the order shall be one striking the testimony or, if the court in its discretion determines that the interest of justice so require, declaring a mistrial."

and favorable to the defendant. *Brady v. Maryland*, 373 U.S. 83 (1963); *Giles v. Maryland*, 386 U.S. 66 (1967); *Harrington v. California*, 395 U.S. 250 (1969); *Moore v. Illinois*, 408 U.S. 786 (1972). In recent years this Court has tended to look with increasing favor upon the liberal use of discretion in criminal discovery while recognizing that the philosophy of full disclosure applicable to civil cases as embodied in the *West Virginia Rules of Civil Procedure* is inappropriate in criminal cases.[3] The pri-

---

[3] Approximately one-third of the state jurisdictions adhere to the common law rule that, absent legislation, the trial court is without power to order discovery in a criminal trial. The remaining two-thirds have enacted legislation or adopted a court rule providing for discovery at the discretion of the trial judge. Moore "Criminal Discovery," 19 *Hastings L.J.* 865 (1967–68). The extent of discretion, however, varies widely among the jurisdictions. In some states, discretion equals prohibition of discovery as trial judges have never before allowed discovery and apparently never will allow it until they are directed to do so by statute or appellate court decision. Krantz, "Pretrial Discovery in Criminal Cases: A Necessity for Fair and Impartial Justice," 42 *Neb. L. Rev.* 127, 146–47 (1962). In states that have made a legitimate attempt to expand criminal discovery, the philosophies behind granting discretion to the courts span the spectrum from a presumption against discovery unless the defense can show some specific need for particular items, to a presumption in favor of discovery, withholding it only upon a showing by the prosecution that there exists a need to protect the information against a particular evil. Only a handful of jurisdictions adhere to the latter position or a position similar to *Fed.R.Crim.P.* 16; See: *Ariz. Rev. Stat.*, R.Crim.Proc., rule 15.5 (1956); *Del.Code Ann.*, Super. Ct. Crim. R., rule 16 (as amended, 1974); *Idaho Code Ann.*, §R19-1530 (Supp. 1951); *Md. Ann. Code*, R.P., Rule 728 (as amended 1971); *Vt. Stats. Ann.*, R. Crim. Proc, rule 16 (as amended 1973). The rule in California with regard to the presumption in favor of discovery developed through the following line of cases: *Powell v. Superior Court*, 48 Cal.2d 704, 312 P.2d 698 (1957); *Funk v. Superior Court*, 52 Cal. 2d 423, 340 P.2d 593 (1959); *Cash v. Superior Court*, 53 Cal. 2d 72, 346 P.2d 407 (1959); and *People v. Estrada*, 54 Cal. 2d 713, 7 Cal. Rptr. 897, 355 P.2d 641 (1960). Still other jurisdictions have announced an absolute right of the defendant to discover specific items of the prosecution's case, e.g. confessions or any admissions against interest, with discovery of other items within the discretion of the trial judge. *Fla. Stat. Ann.* §925.05 (1968); *Ill. Ann. Stat.* ch. 38 §114-10 (1964); *Tenn. Code Ann.* §40-2441 (Supp. 1963).

mary objection to full discovery in criminal cases has been that discovery would: (1) lead to perjury and the suppression of evidence; (2) promote the intimidation of witnesses; (3) give an unfair advantage to criminal defendants since there is no reciprocal right for the prosecution; and (4) require the prosecution to disclose its privileged work product.[4] In some instances these objections are well founded, particularly in situations involving organized crime where the defendant has resources available in the underworld for the purpose of frustrating the judicial system. Accordingly, subject to the Constitutional rule on exculpatory evidence announced in *Brady* and its progeny, *supra,* and *W. Va. Code,* 62-1B-2 (1965)[5] we reaffirm, in conformity with the weight of American precedent, that pretrial discovery is within the sound discretion of the trial court.[6]

---

[4] Cf. Paul R. Rice "Criminal Defense Discovery: a Prelude to Justice or an Interlude for Abuse?" 45 *Mississippi L. Rev.* 887 (1974) See also, *State v. Tune,* 13 N.J. 203, 98 A.2d 881 (1953).

[5] *W. Va. Code,* 62-1B-2 [1965] says:

"Upon motion of a defendant the court may order the prosecuting attorney to permit the defendant to examine and copy or photograph any relevant (1) written or recorded statements or confessions made by the defendant, or copies thereof, which are known by the prosecuting attorney to be within the possession, custody or control of the State, (2) results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case, or copies thereof, which are known by the prosecuting attorney to be within the possession, custody or control of the State, and (3) books, papers, or tangible objects belonging to or seized from the defendant which are known by the prosecuting attorney to be within the possession, custody or control of the State."

[6] The Court, both as currently constituted and immediately before the recent change in membership, has attempted to modernize and clarify the rights of criminal defendants in this and numerous other areas of criminal law and criminal procedure. Reading all these cases together should give guidance to the trial courts with regard to the sound use of discretion at this stage in the development of the common law. For example:

Defendant has a right to a sample of confiscated contraband, alleged to have been in his possession, for independent scientific evaluation, *State v. Smith,* W. Va., 193 S.E.2d 550 (1972); failure of the prosecution to disclose a letter written by the defendant

However, while the court reaffirms that *pretrial* discovery is in the sound discretion of the trial court, we hold that once a prosecution witness has testified from notes used to refresh his recollection, the defense is absolutely entitled to look at the notes from which he testified and must be given a reasonable opportunity to

---

even though obtained by it during trial is grounds for a new trial when such non-disclosure is prejudicial, *State v. Cowan*, W. Va., 197 S.E.2d 641 (1973); defendant has right to counsel at probation revocation hearing, *State ex rel. Strickland v. Melton*, W. Va., 165 S.E.2d 90 (1968), and at a parole revocation hearing, *Dobbs v. Wallace*, W. Va., 201 S.E.2d 914 (1974); denial of defendant's motion for removal and change of venue in the face of extensive pre-trial publicity held violation of due process, *State v. Wilson*, W. Va., 202 S.E.2d 828 (1974); where indigent defendant attempts to represent himself, court is obligated to inform defendant of his rights and the record must show that the defendant was so informed of his right to appointment of counsel and his right to remain silent, and that any waiver of his rights was voluntary and intelligent, *State v. Blosser*, W. Va., 207 S.E.2d 186 (1974); consent to a warrantless search of defendant's living quarters cannot be made by a third person without a showing that the third person had co-equal dominion and control over the quarters, *State v. Hacker*, W. Va., 209 S.E.2d 569 (1974); defendant has a right to call witnesses at a hearing to determine the admissibility of evidence which the defendant asserts was obtained under an illegal search warrant, *State v. Harr*, W. Va., 194 S.E.2d 652 (1973); juveniles have a right to notice to themselves, their counsel and their parents, and a hearing on the court's determination to waive juvenile jurisdiction to adult court, *State v. McArdle*, W. Va., 194 S.E.2d 174 (1972); juveniles are entitled to appointment of counsel, notice, hearing, confrontation of adverse witnesses, and protection against self-incrimination at a commitment hearing when presented with choice between returning to parents or going to the industrial home for girls, *State ex rel. Wilson v. Bambrick*, W. Va., 195 S.E.2d 721 (1973); defendant must be informed of his right to have his counsel present during any conversations with the prosecuting attorney after indictment, *State v. Britton*, W. Va., 203 S.E.2d 462 (1974); due process requirements held mandatory at any hearing for involuntary commitment to a mental institution, *State ex rel. Hawks v. Lazaro*, W. Va., 202 S.E.2d 109 (1974); and, any involuntary commitment for a period greater than 60 days is *prima facie* unreasonable in the absence of the commission of a crime or a showing that the defendant is dangerous to himself or others, *State ex rel. Walker v. Jenkins*, W. Va., 203 S.E.2d 353 (1974).

study the material and to prepare cross-examination. When a police report emcompasses additional information which is not the subject of direct examination, the defense is entitled to inspect it as well, unless the judge determines in an *in camera* proceeding that the material is in no way relevant to the defendant's case *and* disclosure of the material (for example, the names of confidential informants) would endanger police activities in the future.

## II

The apartment at 487 High Street in which the controlled substances were found was searched pursuant to a search warrant issued by Justice of the Peace William M. Bowers based upon an affidavit of Officer J. A. McCabe.[7] This affidavit was sufficient *on its face* to con-

---

[7] The complete affidavit was as follows:
"AFFIDAVIT

"STATE OF WEST VIRGINIA )
                             ) To-wit:
MONONGALIA COUNTY    )

"On this the 26th day of February, 1973, J. A. McCabe personally appeared before me, William Bowers, Justice of the Peace in Central District, stating he is a member of the Morgantown city police Department of Morgantown, West Virginia.

"J. A. McCabe further states he has received reliable information from a reliable and confidential informant who he has known for the past six months who has given reliable information in the past which has proven to be reliable information in the past which resulted in two drug arrests in Monongalia County.

"J. A. McCabe further states he has received information from the above reliable informant that a quantity of a controlled substance to-wit: Hashish and other narcotic drugs, are being kept and possessed by a white male subject going by the name of Metro, in apartment (6) of the White Apartments, located at 487 High Street, in the city limits of Morgantown West Virginia.

"J. A. McCabe further states that the reliable informant has personally observed the above described controlled substance in the above described premises.

"J. A. McCabe further states that he has personally checked with authorities at White Apartments and that two subjects rent the

stitute probable cause for the issuance of a search warrant, *Aguilar v. Texas*, 378 U.S. 108 (1964); *Spinelli v. United States*, 393 U.S. 410 (1969); *United States v. Harris*, 403 U.S. 573 (1971). In *Harris*, the most recent Supreme Court case on the subject, the Supreme Court held that it is necessary for the affiant to set forth facts indicating the existence of criminal activities which would justify a search and, further, to set forth facts demonstrating that information obtained from an unnamed informant is reliable. In the case at bar Officer McCabe swore that he received information from an informant whose information previously had proved reliable, and that the informant personally had seen a controlled substance on the subject premises. Accordingly the affidavit met the two-pronged test of *Harris*: facts were alleged indicating both the reliability of the informant and the circumstances from which the informant drew his conclusion that a crime was being committed on the premises. In interpreting *W. Va. Const.*, Art. III § 6, this Court adopts the Supreme Court's conclusion expressed in *Spinelli, Harris, (supra)* and *United States v. Ventresca*, 380 U.S. 102 (1965) that an affidavit in support of a search warrant "should not be judged as an entry in an essay contest," but rather, must be judged by the facts it contains. Unreasonable or overly technical construction of a search warrant leads to the "elaborate specificity once exacted under common law" which the Supreme Court has condemned.

---

above described apartment, by the name of Steve Hall and M. Dudick.

"Taken, Subscribed and sworn to before me this the 26th day of February, 1973.

J. A. McCabe /s/

Affiant

William M. Bowers /s/

Justice of the Peace in and for Monongalia County, West Virginia."

However, *W. Va. Const.* Article III, § 6 guarantees that no warrant shall issue except upon probable cause, and while ordinarily this Court will not go behind the thought processes of a judge or magistrate, the evidence in this case clearly demonstrates such a total lack of responsibility and such a clear abuse of discretion that the Court must hold that the search was illegal. During a motion to suppress the evidence seized under the search warrant, defendant's counsel called to the stand Justice of the Peace Bowers, who issued the warrant, and he testified as follows:

"Q. Mr. Bowers, do you have any independent recollection of the issuance of a search warrant for the person of Metro Dudick?

A. I signed it either in my own office or the prosecutor's office, and I couldn't say which because I had several of them.

Q. At the time that warrant was issued, would it be correct that both the affidavit and indeed the search warrant itself were prepared and submitted to you?

A. The search warrant was made, I presume in the prosecutor's office. The other warrant was made in my office.

Q. And so the search warrant was already just for your signature?

A. It was already prepared.

Q. Did you add or subtract anything whatever from the search warrant prepared by the prosecuting attorney before you signed it?

A. I didn't put anything on it but my name.

Q. You just signed it?

A. I did sign it or stamped it.

Q. You were aware that the search warrant was being sought upon the information of "a reliable informant."

A. That I couldn't say. I didn't hear that there was an informant.

Q. You didn't know who the informant was?

A. No.

Q. Did you make an independent determination as to whether or not such informant was reliable or unreliable?

A. No, I didn't.

Q. You just accepted the affidavit and signed the thing?

A. The only information that I had was out of the police force, and that was what they had and where they had and when they had and who they had.

Q. As far as the confidential informant goes, you weren't advised who it was?

A. I never was.

Q. Were you advised of any information that would lead you to know more about the confidential informant as to whether or not he was reliable?

A. I never knew and I never asked.

Q. Would it be fair to say that you just signed the warrant then?

A. I signed the warrant and swore the policeman in who signed it or stamped it.

The guarantee of *W. Va. Const.*, Article III, § 6, goes not to form but to substance, and citizens are entitled to an independent evaluation by a magistrate before a search warrant issues. An affidavit in support of a search warrant must be filed before the warrant can be issued, and is frequently the only available evidence of the facts and circumstances justifying the issuance of the warrant. However, when other evidence conclusively demonstrates that a magistrate is so influenced by the police that he becomes a mere agent of the prosecution,

the guarantee of an independent evaluation of probable cause is nullified and the State makes a mockery of one of the constitutional rights of its citizens. Where such a travesty is proved, the warrant must be held invalid and the search held illegal.

## III

During the course of this trial substantial evidence was introduced that, although Dudick paid rent on the apartment at 487 High Street, he did not live there, but had moved all of his belongings to the apartment of a friend and resided there. Accordingly the defendant argued that he was not in control of the premises at High Street and that State's instruction No. 4 was an inaccurate statement of the law. State's instruction No. 4 said:

> "The Court further instructs the Jury that if you believe from the evidence beyond a reasonable doubt that the substance Marihuana was found in the premises occupied or under the control of the defendant, this fact raises a presumption against the defendant of unlawful possession of said Marihuana, and standing alone and unexplained would be sufficient to justify conviction of the defendant of possession of Marihuana as charged under the indictment."

The Court agrees with defendant that State's instruction No. 4 was erroneous because it told the jury that mere presence upon premises in which a controlled substance is found raises a presumption against the defendant of unlawful possession.

This Court takes notice of the pervasive abuse of controlled drugs among adolescents and young adults too inexperienced to be aware of the dangers of narcotics. The Uniform Controlled Substances Act, *W. Va. Code*, 60A-4-401(c) and 60A-4-407 [1971] recognize this problem by making first offense possession of under 15 grams of marijuana a misdemeanor with mandatory probation. Particularly in college localities, many young people are likely to find themselves on premises leased or owned by others of their own age group on which controlled sub-

stances may be found. Defendant's instruction No. 5, which was also given, and which was in direct conflict with State's instruction No. 4, is a correct statement of the law for this case. Defendant's instruction No. 5 said:

"The Court instructs the jury that possession of marijuana is the conscious and intentional physical possession giving the Defendant immediate and exclusive control over marijuana. The offense of possession of marijuana also includes constructive possession if the State can establish beyond a reasonable doubt that the Defendant had knowledge of the marijuana and that it was subject to his dominion and control.

"Under the facts of this case, the State has not shown that Metro Dudich [sic] had actual physical possession of any marijuana when he was arrested. Therefore, before there can be a conviction in this case, the State must prove beyond a reasonable doubt that Metro Dudich [sic] knew that there was marijuana where the police officers found it and that Metro Dudich [sic] exercised dominion and control over it."

Defendant's instruction No. 4 was refused by the court although it also contained a correct statement of the law, and under the facts of this case should have been given. Defendant's instruction No. 4 said:

"The Court instructs the jury that the mere fact that marijuana was found in an apartment occupied by the Defendant, Metro Dudich [sic], with another person standing alone is not sufficient to prove Metro Dudich [sic] has possession of marijuana as "possession" is contemplated under the law. The evidence must show beyond a reasonable doubt that Defendant had knowledge that the marijuana was in the apartment and that he had exercised some dominion or control over the substance. If you have a reasonable doubt that Metro Dudich [sic] knew the marijuana was in the apartment or that he exercised dominion and control over it you should find the defendant not guilty."

Mere proximity to narcotic drugs is not sufficient to convict a defendant of possession. The chain of evidence must link the defendant with the drugs to the extent that an inference may be fairly drawn that the defendant had knowledge of the presence of the drugs where they were found and exercised control over them. *People v. Davenport*, 39 Mich. App. 252, 197 N.W.2d 521 (1972); *People v. Jackson*, 23 Ill.2d 360, 178 N.E.2d 320 (1961); *People v. Pippin*, 16 A.D.2d 635, 227 N.Y.S.2d 164 (1962); *Gonzales v. State*, 157 Tex.Cr.R. 8, 246 S.W.2d 199 (1952); *Mickens v. People*, 148 Colo. 237, 365 P.2d 679 (1961).

## IV

There is one final assignment of error concerning hearsay evidence which the Court finds worthy of discussion. On direct examination of Officer McCabe the prosecution elicited the following testimony:

"Q. And will you outline to the jury the circumstances of that arrest?

A. Yes, sir. On February 26, 1973, I received information from a reliable informant that a person by the name of Met was keeping possession—

MR. FRAME: Your Honor, we would object, pure hearsay, and we move to strike that.

MR. MAGRO: Your Honor, we feel that is the circumstances leading to the arrest upon which the arrest was grounded, and we feel that evidence is admissible.

MR. FRAME: We would ask under what exception of the hearsay rule would you attempt to get pure hearsay in?

MR. MAGRO: Your Honor, investigations are initiated by police officers upon what we would call either public information or upon information supplied to them. It's a mode and manner of putting the investigation into effect or force and in my experience and

judgment, that has always been admissible in a criminal case.

THE COURT: Let the record show that the objection as made is overruled.

A. (Cont'd.) We received information that a person by the name of Met was living at 487 High Street, apartment six. He was supposed to be keeping controlled substances, namely, marijuana and hashish.

MR. FRAME: We would like to have our same objection and motion to strike on that pure undulterated [sic] hearsay.

THE COURT: The objection is overruled and the motion to strike is likewise overruled.

Q. Then what if anything did you do?

A. Then we checked with the person who was managing the White Apartments and found out who was renting the apartment.

Q. Who did you ascertain was renting the apartment?

A. A subject by the name of Metro John Dudick and another subject by the name of Hall.

This testimony was obviously hearsay and was not admissible under any of the generally recognized exceptions to the hearsay rule.[8] Although the quoted testimony might have been relevant in a suppression hearing before the court alone, it was certainly irrelevant and prejudicial in the context in which it was introduced. If the State wished to demonstrate that the defendant had been observed in possession of the controlled substance, a fact highly probative of guilt, the confidential infor-

---

[8] "Inadmissible hearsay may be illustrated thus:
... information from public rumor or unidentified sources that the defendant was engaged in an illegal activity, or lived in the house where illegal articles were found; ..." 2 *Wharton's Criminal Evidence* (13th Ed.) § 265, p. 7. *See also, Brown v. United States,* 202 F.2d 474 (5th Cir. 1953); and *Brawner v. State,* 87 Ga. App. 746, 75 S.E.2d 184 (1953).

mant should have been placed on the stand. While information generated by a confidential informant who has proved to be reliable in the past is sufficient to establish probable cause for the issuance of a search warrant, such hearsay information is inadmissible in the case in chief to prove conscious and deliberate possession for the obvious reason that the declarant is not available for cross-examination.

Therefore, for the reasons assigned above the judgment of the Circuit Court of Monongalia County is reversed and the case is remanded to the Circuit Court for a new trial.

*Reversed and remanded.*