STATE OF WEST VIRGINIA

*v.*

CLARENCE ARTHUR STONE

(No. 14094)

Decided July 8, 1980.

*Larry E. Losch* for appellant.

*Chauncey H. Browning*, Attorney General, *Richard W. Clonch*, Assistant Attorney General, for State.

CAPLAN, JUSTICE:

The appellant, Clarence Arthur Stone, was convicted in the Circuit Court of Nicholas County of the crime of larceny and was sentenced to a term of one year in the county jail. On this appeal he assigns the following errors: (1) the refusal of the trial court to suppress certain evidence and the admission into evidence of certain items seized as a result of a search on May 6, 1975; (2) the giving of State's Instructions Nos. 3,4,6 and 7; and, (3) the refusal of a motion for a directed verdict of acquittal.

Principally, it is the contention of the appellant that probable cause for the issuance of the search warrant which led to the seizure of the evidence complained of (tool box with set of craftsman tools; hydraulic gauge; feed bag with assortment of hand tools) was insufficient. A warrant may be issued only if probable cause for the necessity of the search is shown *U.S. v. Pinkerman*, 374 F.2d 988 (CA4 1967).

In the instant case there were two warrants. On May 5, 1975 a state trooper went before a magistrate, filed an affidavit charging the appellant with receiving and transferring a motorcycle valued at $1,077.00. He swore that the facts for such belief were "that the undersigned has received reliable information from a confidential informant that the aforesaid property belonging to Import Motorcycle, Inc. is concealed in the aforesaid dwelling, said dwelling occupied by the aforesaid Clarence A. Stone." Pursuant to the issuance of the warrant, this trooper with other police officers proceeded to Stone's residence and learned from Mrs. Stone that petitioner was not at home. The residence was searched but no motorcycle was found. Mrs. Stone, at the suppression hearing, testified that she was told by the police officers that they had a warrant to search the house for a mo-

torcycle and mine bits but that the warrant was not shown to her. She further testified that if she had not been told by the police that they had a proper search warrant she would not have permitted any search.

During this initial search one of the police officers observed a set of craftsman tools that bore the initial "D". This officer recognized these tools as belonging to a friend, but he did not confiscate any of the property as a result of this first warrant. The officer who observed the craftsman tool set, on May 6, 1975, went before a magistrate and obtained a second warrant to search for stolen property, namely, "1 3/4" Craftsman Socket Set and Box, 1 Craftsman Tool Box, and assorted tools". On this second search, the described items were found and confiscated along with numerous other items. These items were admitted in evidence over objection of the defendant. The appellant contends that his motion to suppress these items should have been sustained and that the trial court erred in overruling such motion. We agree.

In *State v. Dudick*, 158 W.Va. 629, 213 S.E. 2d 458 (1975), discussing probable cause for the issuance of a search warrant, this Court reviewed *United States v. Harris*, 403 U.S. 573, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971), wherein it was held that it was necessary for the affidavit (as basis for a search warrant) to set forth facts indicating the existence of criminal activities which would justify a search and, further, to set forth facts demonstrating that information obtained from an unnamed informant is reliable. In the instant case no facts were set forth in the affidavit indicating criminal activity which would justify a search of the premises. The affiant simply stated that he had "received reliable information from a confidential informant" that a motorcycle belonging to a named party was being concealed in the subject dwelling. Neither were facts set forth demonstrating that the information obtained from the confidential informant was reliable. No facts were set forth as to how the reliability of the informant was established or that the informant had personally seen the stolen property on the subject premises. We therefore

conclude that under *Dudick, supra,* and *Harris, supra,* the search that took place on May 5 or the early morning of May 6, 1975 was an illegal search. It was during this illegal search that information was obtained which led to the second search. A second search warrant was obtained and the affidavit filed in support of that search warrant, on its face, appears to comply with the requirements set forth in *Dudick, supra.* There was an error as to dates however. The affidavit indicated the stolen property was observed on March 5, 1975 when it should have said May 5, 1975. The record discloses that the property allegedly stolen was not missing on March 5, 1975 but that pursuant to the May 5, 1975 search, the stolen property was observed at that time and a warrant was subsequently issued.

Article III, § 6 of our state constitution and the Fourth Amendment of our federal constitution, protect citizens from unreasonable searches and seizures. We have held the first warrant to be bad and the search pursuant thereto to be illegal. Nothing was seized pursuant to the first warrant however. While allegedly stolen property was observed during this illegal search, this property was not seized until a new, or second, warrant was obtained. Exeuction of this second warrant netted the confiscation of the alleged stolen property. These circumstances raise the question of whether or not information obtained during an illegal search can be used to obtain a second warrant for a search of the same premises for the purpose of seizing the observed property.

At common law admissibility of evidence was not affected by the illegality of the means by which it was obtained. See *Olmstead v. U.S.,* 277 U.S. 438, 72 L. Ed. 944, 48 S. Ct. 564 (1928). Without tracing in detail the erosion of that rule, in *Weeks v. U.S.,* 232 U.S. 383, 58 L. Ed. 652, 34 S. Ct. 341 (1914) the Court held that in a federal prosecution the Fourth Amendment barred the use of evidence secured through an illegal search and seizure. In *Mapp v. Ohio,* 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684 (1961) the federal rule was made applicable

to the States. Since *Mapp v. Ohio, supra,* the rule has been that illegally obtained evidence is not admissible in either federal or state courts.

In the instant case the evidence was not seized pursuant to an invalid warrant. The evidence was observed during a search pursuant to an invalid warrant after which an apparently valid search warrant was obtained and the observed evidence was seized.

In *Davidson v. Mississippi,* 240 So.2d 463 (Miss. 1970), the court reversed a conviction of the defendant for the reason that evidence against the defendant was illegally obtained. The defendant had been accused of receiving stolen property and the state presented evidence by a game warden that he had observed a tractor on the land of the defendant and that he had gone onto the land to check the serial number. Obtaining the serial number, he later ascertained that the tractor had indeed been reported as having been stolen. A search warrant was obtained and the tractor was seized pursuant thereto. The Mississippi court held that the game warden committed a trespass by coming onto the land of the defendant to check the serial number of the tractor and that the subsequent search with a warrant was illegal since the warrant was based on illegally obtained information. Stated positively, a legal search must be based on preceding steps which are themselves lawful in their entirety.

In the instant case, the evidence complained of was observed while the police officers were illegally searching the defendant's premises. The initial search warrant was invalid in that probable cause was not shown for the issuance of the warrant. As in the Mississippi case, property observed during an illegal or improper search cannot be subsequently seized pursuant to a lawful search warrant which was based upon the illegally observed evidence. This is not to say that this evidence is forever barred, for if information pertaining to the stolen property can be lawfully obtained, then a proper search and seizure could be accomplished.

In *Silverthorne Lumber Co. v. U.S.*, 251 U.S. 385, 64 L. Ed. 319, 40 S. Ct. 182 (1920) the Court held that knowledge gained by the government in a prior illegal search could not form the basis of a subsequent search. "A search and seizure must be justified by the steps which precede it, which themselves must be lawful in their entirety." 79 C.J.S *Searches and Seizures,* Sec. 51. See also *McGinnis v. U.S.*, 227 F. 2d 598 (1955).

One of the leading cases discussing "fruit of the poisonous tree" is *Wong Sun v. U.S.*, 371 U.S., 571, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). The Court there held that no probable cause was shown for the issuance of the warrant for the arrest of James Wah Toy. Therefore, being "fruit of the poisonous tree", nothing obtained as a result of the arrest was admissible. It was further said therein that this exclusionary prohibition extends as well to the indirect as to the direct products of such invasions.

In *Pomerantz v. Florida*, 372 So.2d 104 (Fla. App. 1979) the Florida court dealt with a "fruit of the poisonous tree" problem. Pomerantz came into the Miami airport and checked three pieces of luggage for a non-stop flight to Denver, Colorado, on which he held a reserve seat. The luggage was placed on a conveyor belt which led to the baggage room for eventual transport to the plane. One of the pieces of luggage got jammed against a pipe causing it to break open. An airline employee observed that the suitcase contained two black plastic trashbags which were taped shut. In attempting to replace the plastic bags into the suitcase, some seeds of undisclosed description came out. A supervisor was called, the open bag and the other two pieces of luggage were removed and the police were summoned. The open bag was examined and the two black plastic bags were opened whereby it was determined that the contents of the bags was marijuana. The airline supervisor, after being told by the police that they could not open the other suitcases, as that might nullify the search, nonetheless did open such other suitcases. One of these suit-

cases contained black plastic trash bags and the other contained clothing and toilet articles. The plastic bags were cut open and it was determined that they also contained marijuana. The police had no search warrants nor did they apply for any search warrants. The Florida court, citing Florida authorities, together with *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971) and *Harris v. U.S.*, 390 U.S. 234, 19 L. Ed. 2d 1067, 88 S. Ct. 992 (1968), pointed out that "it is not a search for the police to discover evidence in plain sight. The warrantless seizure of such evidence is constitutionally permissible providing three requirements are met: (1) the police must observe the evidence in plain sight without the benefit of a search. [i.e. without invading one's reasonable expectation of privacy], (2) the police must have a legal right to be where they are when they make the plain sight observation, and (3) the police must have probable cause to believe that the evidence seen constitutes contraband or fruits, instrumentalities or evidence of crime."

In the instant case, it clearly is shown that the police did not have probable cause to search and consequently had no legal right to be where they were when they made the plain sight observation.

In *Pomerantz*, the Florida court held the police had no probable cause to search the first suitcase and that as that search was unreasonable, such search "fatally tainted" the subsequent search of the other two suitcases. "Evidence which is located by the police as a result of information and leads obtained from illegally seized evidence, constitutes 'the fruit of the poisonous tree' and is equally inadmissible in evidence." *French v. State*, 198 So.2d 668 (Dist. Ct. App. 1967).

Such reasoning is equally applicable to the instant case. The original search having been without probable cause, was tantamount to a warrantless search. Evidence observed during an illegal or warrantless search cannot be subsequently seized by those responsible for the illegal or warrantless search for such evidence

would clearly be "fruit of the poisonous tree". See *Wong Sun v. U.S., supra;* and *Pomerantz v. Florida, supra.*

In *U.S. v. Jackson,* 585 F.2d 653 (CA4 1978), reflecting a situation somewhat analagous to *Davidson v. Mississippi, supra,* the court said that "a search of one's home or its curtilage, effected as a result of a trespass, is an encroachment on a person's expectancy of privacy and is for that reason, but not because of the trespass, a violation of the Fourth Amendment if not based on probable cause or authorized by a search warrant." Thus, it is seen that for separate reasons, trespass and invasion of privacy, the evidence obtained by virtue of any search must be obtained pursuant to lawful authority.

As set forth in the above cited cases and in *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971), the plain view doctrine is discussed in some detail. We glean from those cases that a warrantless seizure of property in plain view is constitutionally permissible provided three requirements are met: (1) the police must observe the evidence in plain sight without benefit of a search [without invading one's reasonable expectation of privacy], (2) the police must have a legal right to be where they are when they make the plain sight observation and, (3) the police must have probable cause to believe that the evidence seen constitutes contraband or fruits, instrumentalities or evidence of crime. We subscribe to the plain view doctrine as above set forth.

In accordance with the authorities and reasoning herein, we conclude that the motion to suppress should have been sustained and the conviction must, for that reason, be reversed and a new trial be granted.

In view of the reversal of the conviction and the granting of a new trial to the petitioner, we deem it appropriate to comment on some of the instructions given in the first trial. The appellant here complains of State's Instructions Nos. 3,4,6 and 7. Instructions 3 and 4 were concerned with reasonable doubt and even if somewhat confusing, we cannot say that the giving of

these instructions constituted reversible error. The defendant offered two instructions on reasonable doubt that were given. Reading and considering these instructions as a whole, no prejudicial error appears to have occurred. *State v. Snider,* 81 W. Va. 522, 94 S.E. 981 (1918).

State's Instruction No.6 which was given over objection, if erroneous, was not reversible error inasmuch as any incompleteness complained of was cured by the appellant's Instruction No.1. We are, however, concerned with the validity of State's Instruction No. 7. That instruction provides:

> The court instructs the jury that possession of recently stolen property is a circumstance tending to show that the possessor is the thief and may be considered in connection with all other attending circumstances and facts.

This instruction appears to have been approved in *State v. Powers,* 91 W.Va. 737, 113 S.E. 912 (1922) but we now disapprove it unless language negating the inference of guilt is added. In *Powers* it was pointed out in the body of the opinion that "while possession of recently stolen goods is of itself not even prima facie evidence of guilt, yet it may be considered with other facts and circumstances as a circumstance bearing upon the guilt of the accused." We are of the opinion that language of like import must be added to this instruction in order to make it complete and accurate.

For the foregoing reasons the judgment of the Circuit Court of Nicholas County is reversed and a new trial is awarded.

*Reversed;*
*new trial awarded.*