# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent,**

**vs.)  No. 18-0380** (Cabell County 15-F-371)

**Douglas N.,**
**Defendant Below, Petitioner**

**FILED**

**November 8, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Douglas N.,[1] by counsel Jason Goad, appeals the Circuit Court of Cabell County's April 5, 2018, order resentencing him to a cumulative sentence of 65 to 210 years of incarceration following his conviction of multiple sexual crimes. Respondent State of West Virginia, by counsel Caleb A. Ellis, filed a response in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the State committed multiple *Brady*[2] violations and that the circuit court erred in admitting certain text messages into evidence and imposing sentence without obtaining a presentence investigation report.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2007, petitioner took his niece, M.M. ("the victim"), then ten years old, to his ex-wife's home to pick up his daughter. During the drive, petitioner parked the truck in a

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]*Brady v. Maryland*, 373 U.S. 83 (1963).

1

secluded location, put his hand down the victim's pants and underwear, rubbed her genitals, and inserted a finger into her vagina. Petitioner also put his hand up the victim's shirt and touched her breast. The victim told petitioner to stop, which he eventually did, but not before instructing the victim not to tell her parents about what happened. At the time, the victim "really didn't understand what happened" and, as a result, did not immediately tell anyone about the incident. However, approximately three years later the victim "came to understand . . . what had happened," although due to her embarrassment she again did not immediately tell anyone about petitioner's actions. It wasn't until sometime in 2015 that the victim told her best friend, M.G., about the incident via text message. The victim's friend encouraged her to tell her parents. In March of 2015, the victim ultimately disclosed the incident to her parents, who then reported the incident to the Milton Police Department. Milton police officers contacted the West Virginia State Police, who arranged a forensic interview with the victim.

During the interview, the victim described petitioner's abuse to Corporal Marlene Moore of the West Virginia State Police. Following the interview, Corporal Moore took pictures of the crime scene and contacted petitioner to schedule a meeting. In April of 2015, petitioner met with Corporal Moore and denied the allegations against him. However, during questioning, Corporal Moore noticed that petitioner was sweating and an artery in his neck was palpitating quickly. After petitioner left, Corporal Moore provided all relevant information to the Cabell County Prosecutor's Office.

In August of 2015, petitioner was indicted on one count of first-degree sexual assault, two counts of first-degree sexual abuse, and three counts of sexual abuse by a parent, guardian, or custodian. Prior to trial, petitioner filed a motion for a continuance so that he could retain an expert witness and so that the circuit court could review the victim's mental health records in camera. The State responded to the motion with the explanation that it had no basis to believe any of the victim's mental health records would be exculpatory. In July of 2016, the circuit court held a hearing on petitioner's motion, after which it ruled that the State would obtain the records in question so that the court could conduct an in camera review. On July 26, 2016, the sealed records were provided to the circuit court, which ultimately ruled that the records were irrelevant and kept them under seal.

In August of 2016, one day prior to trial, petitioner filed a motion in limine to exclude questions by the State about a text message petitioner's daughter sent indicating that she lied to Child Protective Services ("CPS") during an investigation that was unrelated to the criminal charges at issue. Because the circuit court ruled that questioning on the issue was relevant to the daughter's character for untruthfulness, the circuit court denied petitioner's motion. The circuit court additionally ruled that to the extent he argued that the text message was taken out of context, petitioner would be in the best position to provide other text messages that would provide the needed context.

At trial, the State presented testimony from the victim consistent with her allegations to law enforcement. The victim further testified that she attempted to limit her contact with petitioner following the incident and specifically would not go to petitioner's home alone. The State also presented testimony from the victim's best friend, M.G., who corroborated the victim's disclosure via text message. The State further presented testimony from the victim's

mother and Corporal Moore and introduced the victim's recorded forensic interview into evidence. Although petitioner did not testify, he presented testimony from two of his children, who both testified that the victim continued to come to their home and interact with petitioner following the incident. During cross-examination of petitioner's daughter, the State asked if the witness sent a text message to her grandmother following an interaction with CPS in which she indicated that she lied to CPS. The daughter confirmed that she sent the text message, but indicated that she did not lie to CPS and, in fact, lied to the grandmother. Ultimately, petitioner was convicted of all six counts.

In August of 2016, the circuit court held a sentencing hearing prior to the completion of the presentence investigation report. The circuit court sentenced petitioner to the following terms of incarceration: 25 to 100 years for his conviction of first-degree sexual assault; 5 to 25 years for each of his convictions of first-degree sexual abuse; and 10 to 20 years for each of his convictions of sexual abuse by a parent, guardian, or custodian. The circuit court ordered petitioner's sentences to be served consecutively. The circuit court also imposed fifty years of supervised release and registration as a sex offender upon petitioner's release from incarceration. At the time the circuit court imposed this sentence, it specifically ordered "that this matter be placed on the docket of the 20[th] day of September, 2016, . . . for Reconsideration of Sentence" and directed the probation department to complete a "Post-Sentence Investigation" prior to the hearing. The circuit court also directed that petitioner be evaluated for home incarceration. Thereafter, the circuit court held a hearing in December of 2016 to reconsider petitioner's sentence, by which point the postsentence investigation report had been completed. The circuit court ultimately imposed the same sentences. In April of 2018, the circuit court re-entered its sentencing order for purposes of this appeal. It is from the order resentencing petitioner that he appeals.

In his first assignment of error, petitioner alleges that the State committed two *Brady* violations during the proceedings below.[3] Specifically, petitioner alleges that the State violated the requirements of *Brady* by its failure to provide him medical records from the victim's past treatment with a counselor and in failing to obtain text messages between the victim and her best friend. On this issue, the Court has previously held as follows:

> There are three components of a constitutional due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

Syl. Pt. 2, *State v. Youngblood*, 221 W. Va. 20, 650 S.E.2d 119 (2007).

---

[3]Petitioner actually asserts these arguments as separate assignments of error. However, because petitioner asserts that both errors are the result of *Brady* violations, they will be addressed together herein.

In regard to the first argument, we note that no *Brady* violation occurred because the State obtained the relevant records and provided them to the circuit court for review, pursuant to this Court's prior instructions. In fact, petitioner admits that, upon motion, his counsel was permitted to inspect the records at issue. It is true that this Court has held that "Rule 16(a)(1)(D) of the West Virginia Rules of Criminal Procedure allows discovery of all results or reports of physical or mental examinations which are material to the defense or are to be used as evidence in the prosecution's case-in-chief." Syl. Pt. 1, *State v. Roy*, 194 W. Va. 276, 460 S.E.2d 277 (1995). However, the Court went on to instruct that

> [t]he public policy consideration which underlies the statutes preventing disclosure of confidential information held by counselors, social workers, psychologists, and/or psychiatrists is to enhance communications and effective treatment and diagnosis by protecting the patient/client from the embarrassment and humiliation that might be caused by the disclosure of information imparted during the course of consultation. Considering the existence and strength of these protections established by the Legislature, the only issue left for a trial court is whether a criminal defendant is entitled to judicial inspection of confidentially protected communications *in camera* and thereafter to their release if the inspection indicates their relevancy.

*Id.* at 279, 460 S.E.2d at 279, syl. pt. 2. It is unclear how petitioner believes a *Brady* violation occurred in regard to this evidence, given that the State obtained the records in question, provided them to the circuit court for an in camera review, and petitioner's counsel was permitted to review them. Ultimately, petitioner takes issue with the circuit court's determination that the evidence was irrelevant and its decision to leave the evidence under seal. This, however, constitutes a challenge to the circuit court's evidentiary ruling, and analysis under *Brady* and this Court's cases addressing the holding in that case are inapplicable.[4] In short, the circuit court complied with the requirements of *Roy* by obtaining the records in question, conducting an in

---

[4]In his reply, petitioner addresses respondent's claim that the circuit court's in camera review of the medical records and its ultimate decision to leave the records under seal constitutes an evidentiary determination and argues that, in fact, the distinction as to whether this constitutes a *Brady* violation or an erroneous evidentiary determination is "six one-way half dozen the other." However, petitioner fails to properly analyze the circuit court's ruling under the applicable evidentiary authority and, instead, assumes that because the circuit court was required to analyze the material pursuant to *Roy*, that the evidence "is all *Brady* . . . material, and it would all be relevant evidence under Rule 402." What petitioner ignores, however, is that the circuit court is the entity tasked with reviewing the evidence in question and determining its relevancy. Here, the court undertook such a review and ultimately determined that the evidence was irrelevant. Petitioner's belief that this evidence constituted *Brady* material is insufficient to establish that he is entitled to relief, especially considering that the only authority to which petitioner cites imposes an obligation on the State to obtain and disclose such material, which it did in this matter.

4

camera review, and, after determining the records were irrelevant, declining to permit their admission into evidence. As such, petitioner is entitled to no relief.[5]

As to petitioner's second argument regarding alleged *Brady* violations, we similarly find no error. This argument is predicated on the victim's testimony that her first disclosure of petitioner's conduct was made via text message to her best friend. According to petitioner, "a defendant is entitled to any written statements made or adopted by any witness as soon as said witness testifies." In support of this argument, petitioner cites to *State v. Dudick*, 158 W. Va. 629, 213 S.E.2d 458 (1975). However, petitioner's assertion misstates the holding of that case, wherein the Court ruled that "after a witness has testified *from notes used to refresh his recollection*, the defense is absolutely entitled to inspect the notes from which the witness testified and must be given a reasonable opportunity to prepare cross-examination." *Id.* at 629, 213 S.E.2d at 459, syl. pt. 1, in part (emphasis added). Because the witness in question did not use notes to refresh her recollection, *Dudick* does not support petitioner's position and he is entitled to no relief.

Petitioner further argues that, pursuant to Rule 26.2 of the West Virginia Rules of Criminal Procedure,

> [a]fter a witness other than the defendant has testified on direct examination, the court, *on motion of a party who did not call the witness*, shall order the attorney for the state or the defendant and the defendant's attorney, as the case may be, to produce for the examination and use of the moving party any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.

(Emphasis added). Petitioner fails to recognize, however, that this rule and the subsequent holdings from this Court interpreting it require that the defendant move for production of any written statement. On appeal, petitioner fails to cite to any portion of the record wherein he moved for such production. In fact, petitioner argues that he "had no opportunity to make a motion for the [text messages] because he wasn't aware of written text messages until his cross[-

---

[5]Petitioner raises a separate assignment of error alleging that "[g]iven the *Brady* violation relating to the medical records[, petitioner's] motion to continue should have been granted for expert review of said records." However, because the Court finds no *Brady* violation occurred, petitioner is not entitled to relief in regard to the denial of a continuance that he predicates, entirely, on the alleged *Brady* violation. Additionally, in support of his assignment of error regarding the continuance, petitioner fails to cite to any statute, case, or other authority to support his position, as required. *See* W. Va. R. App. P. 10(c)(7) ("The brief must contain an argument *exhibiting clearly the points of* fact and *law presented*, the standard of review applicable, *and citing the authorities relied on*, under headings that correspond with the assignments of error. . . . The Court may disregard errors that are not adequately supported by specific references to the record on appeal.") (emphasis added). For these reasons, petitioner is not entitled to relief in regard to this related assignment of error.

]examination had started." Again, petitioner fails to acknowledge the relevant authority regarding disclosure of such material, which plainly provides that parties are to move for such production "[a]fter a witness other than the defendant has testified." On appeal, petitioner fails to explain why he could not move for these materials after the witness's testimony, as is clearly contemplated by the applicable rule. Accordingly, we find that petitioner is entitled to no relief.[6]

In his next assignment of error, petitioner argues that the circuit court erred in admitting into evidence text messages between his daughter and her grandmother that were unrelated to the crimes in question. According to petitioner, Rule 106 of the West Virginia Rules of Evidence dictates that when a portion of a writing is introduced, the entire writing should be admitted into evidence to provide context. He further argues that this evidence should have been excluded as unfairly prejudicial under Rule 403. Upon review, we find no error.

---

[6]In support of his argument that the failure to obtain and provide him with the text messages in question constitutes a *Brady* violation, petitioner ultimately asserts that he should have been entitled to a jury instruction under *State v. Osakalumi*, 194 W. Va. 758, 461 S.E.2d 504 (1995). Although we find, as set forth above, that petitioner has failed to adequately establish that he was entitled to the text messages in question, we additionally find that petitioner waived the issue of an *Osakalumi* instruction by his failure to object to the proposed jury instructions. On appeal, petitioner asserts that "trial counsel never asked for an instruction under *Osakalumi* because he was unaware of all of the above until well after he had submitted his proposed jury instructions." However, petitioner ignores the fact that well after he was made aware of the existence of the text messages, the following exchange occurred:

> THE COURT: Yesterday afternoon/evening we went over instructions informally. Counsel, do you wish to put on the record any objections you have to the - -
>
> [PETITIONER'S COUNSEL]: No objections, Your Honor.
>
> THE COURT: Everything we did is good and what we have in front of us you have no objections at all?
>
> [PETITIONER'S COUNSEL]: No objections.
>
> THE COURT: You are waiving any appeal rights you may have based on objections?
>
> [PETITIONER'S COUNSEL]: Yes, your honor.

"This Court will not consider an error which is not preserved in the record nor apparent on the face of the record." *Osakalumi*, 194 W. Va. at 759, 461 S.E.2d at 505, syl. pt. 3 (quoting syl. pt. 6, *State v. Byers*, 159 W. Va. 596, 224 S.E.2d 726 (1976)). As such, any argument concerning potential jury instructions has been waived and will not be considered on appeal.

As this Court has previously held,

> "[t]he West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence and the appropriateness of a particular sanction for discovery violations are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard." Syl. Pt. 1, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995).

Syl. Pt. 1, *State v. Gray*, 204 W. Va. 248, 511 S.E.2d 873 (1998). Additionally, Rule 106 provides as follows: "If a party introduces all or part of a writing or recorded statement, an adverse party may request the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." W. Va. R. Evid. 106. The record shows that, prior to trial, petitioner filed a motion in limine to prevent the State from addressing the text message during trial, but that motion was denied. When the State questioned the witness about this text message during cross-examination, petitioner did not request the introduction of any additional text messages, thereby waiving any right to argue error under Rule 106 pursuant to *Gray* on appeal.

Further, the evidence in question was not subject to exclusion under Rule 403, which permits "exclu[sion of] relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice," among other considerations. W. Va. R. Evid. 403. Here, petitioner argues that the evidence was unfairly prejudicial because it concerned an unrelated CPS investigation. According to petitioner, the State's introduction of this evidence created the impression that the witness lied about an investigation concerning the crimes in question. However, petitioner ignores the fact that, upon redirect, his counsel questioned the witness regarding the nature of the investigation at issue, thereby preventing any potential to mislead the jury. More importantly, petitioner ignores the fact that the State was permitted to inquire into the witness's credibility. *See* W. Va. R. Evid. 608(b) ("But the court may, on cross-examination of a witness other than the accused, allow [specific instances of a witness's conduct] to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness."). Here, the State sought to inquire as to the witness's character for untruthfulness, and we find no error in the circuit court's evidentiary determination.

Finally, petitioner argues that the circuit court erred in imposing his sentence without first requiring that a presentence investigation report be prepared and without affording him the opportunity to speak, both in violation of Rule 32 of the West Virginia Rules of Criminal Procedure.[7] We find, however, that petitioner's argument wholly ignores the fact that the circuit

---

[7]Rule 32(b)(1) requires "the probation officer [to] make a presentence investigation and submit a report to the court before the sentence is imposed," absent certain exceptions that are inapplicable here. Additionally, Rule 32(c)(3)(C) requires the circuit court, prior to imposing

(continued . . .)

court later held a full hearing to reconsider petitioner's sentence after the preparation of a postsentence investigation report and during which he was afforded his right to address the circuit court. In short, any alleged error in regard to the first sentencing hearing was rendered moot by the holding of the second sentencing hearing. "Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court." Syl. Pt. 1, *State ex rel. McCabe v. Seifert*, 220 W. Va. 79, 640 S.E.2d 142 (2006) (citation omitted). In addressing a circuit court's failure to obtain a presentence investigation report prior to imposing sentence, this Court has previously held that the proper remedy is to "reverse the defendant's sentence and remand for the preparation of a presentence report in accordance with Rule 32 and a new sentencing hearing." *State v. Brown*, 210 W. Va. 14, 29, 552 S.E.2d 390, 405 (2001). Here, such relief is moot because, ultimately, the circuit court reconsidered petitioner's sentence after receiving a report that, practically, contained the same information as a presentence investigation report; offered petitioner an opportunity to address the court; and then decided to impose the earlier sentence. According, we find no reversible error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**  November 8, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

---

sentence, to "address the defendant personally and determine whether the defendant wishes to make a statement and to present any information in mitigation of sentence."