STATE OF WEST VIRGINIA

*v.*

CEBERT WHITE, JR.

(No. 14434)

Decided July 9, 1981.

*Morton & Blyler* and *Ernest V. Morton, Jr.,* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *S. Clark Woodroe,* Assistant Attorney General, for defendant in error.

NEELY, JUSTICE

This is a criminal appeal from the Circuit Court of Nicholas County in which the appellant, Cebert White, Jr., was convicted by a jury of possession with intent to manufacture a controlled substance. We affirm.

The defendant was arrested on 23 May 1977 following a search of his residence. The search was under a warrant issued on that date by Magistrate Philip Conley. Deputy Jerry Simms had presented Magistrate Conley with an affidavit averring that White was in possession of and manufacturing "marihuana and other controlled substances" at the described premises. Deputy Simms' affidavit recited as its basis that:

> "the facts for such belief are that on the 19th day of May, 1977, a reliable informant personally viewed a quantity of marihuana and other controlled substances in and upon the above-described premises."

This passage was quoted in the search warrant by Magistrate Conley as grounds for issuing the warrant, and these were the only grounds enumerated.

In December 1977 a hearing was held on defendant's motions to quash the search warrant and for a bill of particulars. All of the items on the bill were granted and communicated save those requesting police or investigative reports and a summary of expected prosecution trial testimony. At the same hearing, Deputy Simms and Magistrate Conley testified about the circumstances under which the affidavit was signed and the search warrant issued. Magistrate Conley's testimony was that Deputy Simms came to his house with a prepared affidavit and search warrant with spaces left for their signatures. The magistrate put Simms under oath, then asked him about the informant and the basis of his information. The officer replied that the informant had visited the defendant's residence and had seen packets of marijuana and other things he suspected were controlled substances. Magistrate Conley asked Deputy Simms about the informant's reliability and Simms indicated that the informant had provided useful information to Simms and other deputies in the past, including one tip which led to a conviction in Conley's own court.

The only material differences between Magistrate Conley's and Deputy Simms's testimony are: Simms said he knew and told Conley about only the one instance of the informant's prior reliability with which Conley was familiar; Simms said Conley put Simms under oath only after the discussion about the nature of the information and the informant's reliability; and, Simms said he volunteered the information, not that Conley solicited it. After the hearing the motion to quash the warrant was tentatively denied as was a motion to suppress the evidence gathered under the warrant, and these denials were made final at trial.

I

Defendant argues that the search warrant was defective because on its face it did not establish reasons to believe the unnamed informant was a reliable source. *W. Va. Const.*, art. III, § 6 and *U.S. Const.*, Amendment IV require that probable cause be established under oath before a search warrant may be validly issued. This Court held in *State v.*

*Dudick*, 158 W.Va. 629, 213 S.E.2d 458, 465 (1975), that when the affiant is swearing to information given by an unnamed informant, the constitutional requirements are met by (1) setting forth facts to establish the existence of criminal activity to justify the search, and (2) setting forth facts to establish that the informant is reliable. We further held in that case that the magistrate or judge who issues the search warrant must make an independent evaluation of the sufficiency of both these elements, *id.* at 466. Defendant here argues that the warrant is defective because the affidavit merely asserts the conclusion that the informant is reliable, but provides no basis for independent evaluation of that conclusion.

While the substance of the affidavit is brief,[1] it is

---

[1] The Affidavit for the Search Warrant reads as follows:

This day personally appeared before the undersigned, a Magistrate for said County, Jerry D. Simms, who, after being first duly sworn, upon his oath says:

That on the 19th day of May, 1977, and prior to the making of this Complaint, in the said County of Nicholas, in the State aforesaid, Cebert White, Jr., did unlawfully and knowingly possess controlled substances, to-wit: marihuana and other controlled substances, and that the affiant has cause to believe and does believe that property manufactured, sold, kept, concealed, possessed, controlled, designed and intended for use, which is and has been used, in violation of the criminal laws of the State of West Virginia

Namely, to-wit: marihuana and other controlled substances, are concealed in a one-story white modular house located and described as follows:

Beginning at the Intersection of West Virginia State Route 20 and Nicholas County Route 20/7, heading south from said Intersection on West Virginia Stata Route 20 approximately two-tenths (.2) mile to an unpaved driveway on the right of said West Virginia State Route 20, said driveway also being on the north side of a redwood-colored A-Frame house, turning right and into said unpaved driveway heading approximately 250 feet west of said West Virginia State Route 20 on said driveway to a one-story white modular house positioned on the south side of said driveway, said house belonging to Cebert White, Sr., and occupied by Cebert White, Jr.,

and that the facts for such belief are that on the 19th day of May, 1977, a reliable informant personally viewed a quantity of marihuana and other controlled substances in and upon the above-described premises.

sufficient in this case. The rule in *Dudick* was derived from a series of United States Supreme Court rulings, the last of which was *United States v. Harris,* 403 U.S. 573 (1971). In *Harris,* the Court of Appeals for the Sixth Circuit had found an affidavit supporting a search warrant defective because the affidavit there stated that an unnamed informant was "prudent," not truthful. No other information was given purporting to establish the truthfulness of the informant, and this is what the Court of Appeals found lacking. *Id.* at 576, 579. However, the Supreme Court found that the warrant had been validly issued because "while a bare statement by an affiant that he believed the informant to be truthful would not, in itself, provide a factual basis for crediting the report of an unnamed informant," other factors would suffice, such as the type of information given and the informant's basis of knowledge, *id* at 579-80. In *Harris,* the informant had himself purchased illegal whiskey from the defendant and the defendant had a reputation among law enforcement officials as a trafficker in illegal whiskey. The Court held this information was sufficient to make up for the inadequacies of a bare assertion of "prudence."

*Harris* makes it clear that there is no necessity for a magical averment of the prior reliability of an informant. Rather, the informant's reliability in the case may be inferred from the circumstances. *Id.* at 581-82; *United States v. Branch,* 565 F.2d 274, 276 (4th Cir. 1977). We can imagine that frequently citizens are eyewitnesses to illegal activities which they report to the police, and just as frequently the police will never have had any previous dealings with those informants. Moreover, such public assistance of law enforcement officers should be encouraged, not stymied. *Accord, Guzewicz v. Commonwealth,* 212 Va. 730, 735, 187 S.E.2d 144, 148 (1972). When such informants desire anonymity from fear of retaliation or other reasons, it would be impossible to act upon their information if it were necessary to demonstrate a record of prior reliable dealings with the police. At a minimum, then, we would distinguish cases where the informant is relaying first-hand observations from those cases where the

informant's own source of information is hearsay. Therefore, we hold that an averment that the informant was an eyewitness to particular criminal activities involving particular individuals in a particular place is alone sufficient to permit the issuance of a valid search warrant.

In testing the sufficiency of the affidavit here we note the Supreme Court's admonition that "[i]f the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a common sense and realistic fashion," *United States v. Ventresca*, 380 U.S. 102, 108 (1965). Similarly, "[a] policeman's affidavit should not be judged as an entry in an essay contest," *Spinelli v. United States*, 393 U.S. 410, 438 (1969) (Fortas, J., dissenting); and *see United States v. Harris*, 403 U.S. 573, 577-79 (1971); *State v. Dudick*, 158 W. Va. 629, 213 S.E.2d 458, 465 (1975). With these principles to guide us we can now look to the affidavit in this case to see what it tells us. It tells us the place to be searched; that the place was owned by Cebert White, Sr. and was occupied by Cebert White, Jr.; that marijuana and other controlled substances were being kept there; and, that the criminal activities alleged were personally observed by the unnamed informant who had been in the premises four days earlier. This first-hand information places the criminal activity in the place mentioned and the fact that it is first-hand information makes it reliable. When read in a "common sense and realistic fashion" the affidavit does not reveal a mere allegation of suspicion and belief. Rather, it provides a reasonable basis for a detached and neutral magistrate to believe there was probable cause to search the premises.[2]

---

[2] We do not suggest that this affidavit should be used as a model in the future. It is far better to provide as much information as is available on the face of the affidavit to further substantiate the reliability of the information and informant. *See* McGinley, *The "Four Corners" Requirement: A Constitutional Prerequisite to Search Warrant Validity*, 31 Okla. L. Rev. 289 (1978). In this case, subsequent judicial review of the sufficiency of the affidavit would have been simpler had the affiant included information about the prior tip and the fact that the police had had the informant make a controlled buy

We do not find that *Dudick, supra,* suggests otherwise. *Dudick* stands for the proposition that a search warrant, valid on its face, may be impeached if it is later shown that the magistrate or judge made no independent determination of the two issues of the likelihood of the existence of criminal activity and of the reliability of the informant, *see State v. Dudick,* 158 W. Va. 629, 213 S.E.2d 458, 464-66 (1975). But the validity of the warrant before us now is strengthened, not impeached, by the later testimony of Magistrate Conley and Deputy Simms. Regardless of whether Conley initiated the inquiry, it is clear that there was a dialogue and that the magistrate did make an effort to determine what the informant said and what made his information reliable. It is also clear that Conley was impressed by the fact that this same informant had previously supplied a tip which led to a conviction in his own court. Since we have already determined that the warrant was sufficient on its face, it does not matter that the additional information might not have been given under oath. The net effect of the testimony confirms that Conley exercised his own judgment in determining that there was probable cause to support a search warrant.[3] *Cf. Dudick, supra,* at 466 (showing no independent evaluation by the magistrate). Therefore, the warrant was not defective and the motion to quash was properly denied.

## II

White was indicted in November 1977 and tried in March 1978. Defendant makes several assignments of error based

---

from White after they received his information and before the warrant was issued. *See* n.3 *infra.*

[3] We do not reach, and therefore do not decide, the question of whether a warrant that is *insufficient* on its face may be upheld by subsequent testimony about information actually given the issuing judge but not contained in the affidavit or warrant. We note, however, that this clearly will be unacceptable after October of this year when the new *W. Va. Rules of Criminal Procedure,* Rule 41(c) takes effect. That rule states that any information that the issuing judicial officer finds important to his decision to issue a search warrant must be taken under oath and incorporated into the affidavit. As a matter of common sense and judicial efficiency, this is certainly the better practice.

on the admission of improper evidence and comments upon evidence not admitted at all. First, the prosecution referred in opening argument to pieces of evidence which were not later introduced. Second, a receipt signed by defendant cataloging the items seized from him was introduced as evidence and included two items not themselves introduced as evidence. The receipt also characterized some of the other evidence as being connected to marijuana when in fact no explicit connection was documented. Third, in closing argument, the prosecution referred to a set of scales in evidence as having marijuana powder on them, but when the scales were introduced there was no longer any powder on them and the substance alleged to have been there was never shown to be marijuana. Based on this, the defendant challenges the sufficiency of the evidence and claims prejudice. After carefully reviewing the record we conclude that any error committed was harmless since there was overwhelming evidence in the record of possession with intent to manufacture.

In order to sustain our conclusion of harmless error we must apply a two step test as set forth in *State v. Atkins*, 162 W. Va. 815, 261 S.E.2d 55 (1979), *cert. denied*, 445 U.S. 904 (1980). "First, the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt . . . . [Second, if it] is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury." *Id.* at 61.

The sufficiency of the admissible evidence is easily demonstrated here. Manufacture is defined to include "production," *W. Va. Code*, 60A-1-101(m) [1971], and production is defined to include "planting, cultivating, growing or harvesting of a controlled substance," *W. Va. Code*, 60A-1-101(u) [1971]. The jury had before it properly introduced evidence and heard testimony from which it

could certainly have determined that defendant knowingly kept in his house two live marijuana plants, four bags of marijuana, a set of scales, and several pipes. Defendant's own Instruction 16 correctly stated that "you may infer that a person intends to accomplish the necessary, natural and probable consequences of his act." The jury was entitled to conclude that a person who knowingly possesses live marijuana plants intends the natural consequence that they grow. That conclusion under these circumstances is sufficient for a conviction for possession with intent to manufacture a controlled substance.

In determining that the errors assigned by defendant were not likely to have prejudiced the jury, Atkins suggests that we consider: (1) whether the error was tangential to the issue of guilt; (2) whether the error was repeated or emphasized; (3) whether a special jury instruction was given because of the error; (4) whether the error elicited any questions from the jury; (5) the overall quality of the State's proof; and, (6) whether the cumulative impact of the error was great in the context of the entire trial. *State v. Atkins*, 162 W. Va. 815, 261 S.E.2d 55, 62-63 (1979), *cert. denied*, 445 U.S. 904 (1980).

Of these factors, the most important to remember in this case is the relatively minute place these errors had in the context of the entire trial. The trial lasted one and one-half days and virtually all of the trial time during which the jury was present was occupied by the presentation of physical evidence gathered in the search of White's house. The physical evidence introduced included four bags of marijuana; two marijuana plants; a set of scales; and, four smoking pipes. Five sheriff's deputies and a chemist testified about the circumstances of the search and the subsequent disposition and testing of the evidence. Since different officers handled the evidence at various stages of the investigation, frequently the same exhibit was the subject of more than one officer's testimony. Clearly, the time and effort spent on getting this evidence introduced dwarfed the time occupied by the prosecution's statements in opening argument about evidence that was never

produced.[4] These remarks were not emphasized in any way nor were they repeated. They occupy only five lines out of the approximately one hundred forty-seven lines in the opening argument. They elicited no objection from the defense and were not mentioned by the defense until the next day, and then even the defense was unsure whether any superfluous items were mentioned. Finally, we note that the remarks were so far separated from the jury's deliberations that we conclude they could not have had any substantial impact on the jury.

The second evidentiary matter of which defendant complains concerns the discrepancy between the property receipt, the evidence, and the characterization of evidence made by the property receipt. At trial, defense counsel first objected generally to the introduction of the receipt. Since parts of the receipt could properly be introduced, the court was correct in overruling the general objection, *see Morgan v. Price*, 151 W. Va. 158, 165, 150 S.E.2d 897, 902 (1966); *Willey v. Travelers Indem. Co.*, 156 W. Va. 398, 407, 193 S.E.2d 555, 560-61 (1972). Defense counsel next objected to the inclusion on the receipt of certain items of paraphernalia, at which point the court then hid some of these items from the jury's view. At no time did defendant object at trial to the characterization of the evidence introduced or to the divergence between the items recorded on the receipt and those introduced into evidence, so we need not reach the question of prejudice with regard to this.[5]

Defendant's third objection, the prosecution's reference to the "marijuana powder" on the scales in closing argument, is more troubling. This remark was made twice;

---

[4] These included a pipe, a soda case said to contain tiny marijuana plants, a cigar box said to contain marijuana paraphernalia, and a match box said to contain marijuana.

[5] We note, however, that at no time did either side direct the jury's attention to the receipt to prove the existence of the items recorded on it, but rather it was introduced and discussed to show a chain of custody of the items introduced and to show that the chain began with White. Moreover, there was not so much evidence before the jury that the jury would have used the receipt as a check-list of the evidence they had seen. The emphasis was on the physical evidence, not on the document.

defense objected both times, it took place just before the jury's deliberations; and, it elicited some qualifying remarks from the court. However, the prosecution was arguing that the scales were evidence of defendant's intent to deliver drugs, another charge in the indictment, not evidence of the intent to manufacture. To the extent that the emphasis, repetition, and special instruction might have prejudiced the jury, their attention was directed to a different offense in a three count indictment; defendant was convicted of *but one count* which was intent to manufacture and *not* delivery. We conclude, therefore, that the defendant was not prejudiced by these remarks and that the errors noted with regard to the evidence were harmless.

## III

Finally, defendant contends he was denied effective discovery because seven months passed between arrest and indictment without a preliminary hearing, and because certain items were denied in the requested bill of particulars. The argument about the preliminary hearing is entirely without merit. The argument about the bill of particulars is without merit unless some specific showing of prejudice can be made and defendant has not sustained this burden.

We are troubled that the defendant's right to a hearing after arrest and before indictment was so flagrantly disregarded; however, the cure for that is a writ of mandamus before indictment and not reversal after conviction. *State ex rel. Rowe v. Ferguson,* 165 W. Va. 183, 268 S.E.2d 45, 50 (1980).

There is no evidence in the record that denial of the material requested in the bill of particulars deprived the defense of any exculpatory material, or that it impaired cross-examination, or that the defense was in any way surprised by any prosecution witnesses or the contents of their testimony. While we have previously indicated that "we are unanimously of the opinion that the proper way to try a criminal case is to be responsive to all reasonable defense requests," *State v. Sette,* 161 W. Va. 384, 242 S.E.2d

464, 472 (1978), we have also held that, absent a showing that lack of discovery was prejudicial there is no reversible error, *Wilhelm v. Whyte*, 161 W. Va. 67, 239 S.E.2d 735, 739 (1977).

Accordingly, for the reasons set forth above, the judgment of the Circuit Court of Nicholas County is affirmed.

*Affirmed.*