332 S.E.2d 619

**STATE of West Virginia**

v.

**Charlie CURTIN.**

No. 16248.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 29, 1985.

Decided July 9, 1985.

Ernest V. Morton, Jr., and Joyce H. Morton, Webster Springs, for appellant.

George P. Stanton, III, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

The defendant, Charlie Curtin, was convicted in the Circuit Court of Webster County of manufacturing and cultivating a controlled substance, i.e., marijuana, and possessing with intent to deliver a controlled substance, marijuana. On July 6, 1982, the defendant was sentenced to an indeterminate term of from one to five years in the penitentiary. Following denial of his motion for a new trial, he prosecuted this appeal. We affirm.

The facts of the case show that Jeffrey "Rocky" Hamrick was arrested in Webster Springs, West Virginia, for possession of marijuana on September 28, 1979. Soon after he was arrested, Mr. Hamrick gave the police a statement in which he implicated the defendant in drug manufacturing and trafficking. On the basis of this statement the police obtained a search warrant for the defendant's residence. Pursuant to the search which was conducted the same evening the warrant was issued, police officers found several marijuana plants in the house hanging upside down and apparently drying, a "pile" of full-grown marijuana plants in a closet, several plants hidden beneath a pile of clothes, a number of bags of marijuana and certain drug paraphernalia. The police also found a large number of marijuana plants growing in a garden area in the defendant's backyard. On the basis of this evidence, the defendant was arrested.

I

The defendant contends that the court erred in granting the State's motion to strike prospective jurors Elizabeth Tracy and Seldon Taylor for cause. The record indicates that during the impaneling of the twenty jurors from which twelve would ultimately be selected, Mrs. Tracy informed the court that she was employed by a local newspaper and had written an article about the defendant's case. The prosecutor challenged her for cause, and the court excused her:

Well, what you learned did come from matters outside the courtroom and jurors are required to make up their minds from what they hear in the courtroom. It is no reflection on you, Mrs. Tracy, but I believe it would be unfair to some of the parties to allow you to preside as a juror and therefore I am going to excuse you.

Later in the *voir dire* Mr. Taylor informed the court that he was a friend or acquaintance of a number of the defendant's witnesses and of the defendant himself and had previously discussed the case with others. The following colloquy took place between Mr. Taylor and the court:

THE COURT: Have you heard about this case?

JUROR TAYLOR: Yes, sir.

THE COURT: Have you talked it over with someone that might be a witness in the matter?

JUROR TAYLOR: Yes, I have.

. . . . .

THE COURT: Did you discuss facts or rumors or what might be facts that might eventually be exposed or become evidence in this case?

JUROR TAYLOR: I probably did.

THE COURT: As a result of your exposure to such conversation do you think you could possibly become biased or prejudiced or have become biased or prejudiced in this matter?

JUROR TAYLOR: I probably would be.

. . . . .

THE COURT: Do you think it would be difficult to erase from your mind what you have heard and arrive at a verdict as required by law?

JUROR TAYLOR: I have been friends and acquaintances of some of these people for several years.

THE COURT: Well, are you also a friend and acquaintance of Mr. Curtin too?

JUROR TAYLOR: Yes, sir.

THE COURT: In other words, it would be difficult for you to serve as a juror on this case?

JUROR TAYLOR: Yes, sir.

THE COURT: It probably won't work. I am going to excuse you.

■ In *State v. Hatfield*, 48 W.Va. 461, 37 S.E. 626 (1900), this Court held, in syllabus point 1, in part:

The object of the law is, in all cases in which juries are impaneled to try the issue, to secure men for that responsible duty whose minds are wholly free from bias or prejudice either for or against the accused. . . .

The defendant argues that the court should have questioned the two jurors more extensively about their bias or lack thereof. In syllabus point 2 of *State v. Beacraft*, 126 W.Va. 895, 30 S.E.2d 541 (1944), we said:

In a criminal case, the inquiry made of a jury on its voir dire is within the sound discretion of the trial court and not subject to review, except when the discretion is clearly abused.

■ The purpose of conducting a *voir dire* examination of a jury is to find jurors who are qualified, not related to either party, and with no interest in the cause or sensible of any bias or prejudice. *See State v. Pendry*, 159 W.Va. 738, 227 S.E.2d 210 (1976).

■ In the case before us, the court conducted a rather extensive examination of Mr. Taylor, who clearly, from the answers given, was somewhat biased and even admitted that he could not render an impartial verdict. In the case of Mrs. Tracy, the court could have inquired further, but in view of the fact that she was familiar with the facts of the case and had written a newspaper article on it after presumably conducting her own investigation, it was not error to dismiss her as a potential juror. The defendant is no more entitled to jurors who are biased in his favor than the State. The rule of impartiality applies to both. Therefore, we conclude that the court did not abuse its discretion in excusing potential jurors Taylor and Tracy.

II

The defendant next complains that the court erred in denying his motion to suppress the evidence seized under the search warrant. He contends that the magistrate who issued the warrant failed to make an independent evaluation of probable cause and of the reliability of the informant.

■ In *State v. Dudick*, 158 W.Va. 629, 213 S.E.2d 458 (1975), at syllabus point 2, we stated:

The constitutional guarantee under W.Va.Const., Article III, § 6 that no search warrant will issue except on probable cause goes to substance and not to form; therefore, where it is conclusively proved that a magistrate acted as a mere agent of the prosecutorial process and failed to make an independent evaluation of the circumstances surrounding a request for a warrant, the warrant will be held invalid and the search will be held illegal.

At a suppression hearing in this case, Deputy David Morris and Magistrate Vivian Miller testified about the particular circumstances under which the search warrant was issued. Deputy Morris testified that he arrested Rocky Hamrick for possession of marijuana on September 28, 1979. Shortly after his arrest, Mr. Hamrick gave

a statement to the police in which he indicated that he had been at the defendant's residence earlier in the evening and while there had seen a large quantity of marijuana and had purchased a bag of marijuana from the defendant for twenty dollars. On the basis of this information, Deputy Morris went to the prosecuting attorney's office where he and the prosecutor prepared an affidavit and a search warrant. He then took Mr. Hamrick's written statement, the bag of marijuana that had been confiscated from him at the time of his arrest, and the prepared documents to the magistrate's office. The magistrate put him under oath and questioned him about the information in the affidavit for approximately twenty minutes. Deputy Morris then signed the affidavit in which he averred that the defendant was in possession of marijuana at the described premises. Magistrate Miller testified that when the deputy came to her office she asked him briefly to recite the facts in his own words. She read the affidavit and Jeffrey Hamrick's written statement and asked questions about both, although she testified that she could not recall the exact questions. In response to a question from the court, Magistrate Miller testified that she did ask Deputy Morris about the reliability of the statement before she signed the search warrant.

In *State v. Dudick, supra,* upon which the defendant relies, the search warrant was prepared in the prosecuting attorney's office and was signed by the justice of the peace without knowing who the informant was or whether the information was reliable or unreliable. There the Court held that the judicial officer had become "a mere agent of the prosecutorial process and failed to make an independent evaluation of the circumstances surrounding a request for a warrant." *Dudick, supra,* at syllabus point 2. In this case the magistrate was not involved in the preparation of the affidavit or the warrant and although the magistrate could not remember the exact questions she asked of the police officer she did testify that she asked questions about his information for approximately twenty minutes and inquired about the reliability of the information. There is no contradictory evidence suggesting that the magistrate did not make a probable cause determination before issuing the search warrant. She testified that she did.

■ The appellant argues that the magistrate did not make an independent evaluation of Rocky Hamrick's reliability before issuing the search warrant. In syllabus point 1 of *State v. White,* 167 W.Va. 374, 280 S.E.2d 114 (1981), we held that a search warrant may issue upon "an averment that an unnamed informant was an eyewitness to criminal activities conducted on the premises described in the warrant." Certainly the same would be true in the case of a named informant such as Mr. Hamrick who stated that he not only witnessed the criminal activity but participated in it. In this case Deputy Morris' affidavit recited the informant's name and the magistrate questioned him about the informant's reliability. This recitation placed the warrant outside of the heightened reliability test used when an unnamed informant is involved. We believe, under the circumstances of this case, that the magistrate made an independent judicial decision that there was probable cause to believe that there was marijuana on defendant's property. Therefore, the motion to suppress was properly denied.

### III

The defendant contends that the marijuana plants found in the garden behind his residence should have been suppressed as the product of an illegal search because the search warrant was only for the house itself. The State, on the other hand, argues that the "plain view" exception to warrantless searches applies in this case to validate the seizure of the plants.

The record indicates that Deputy Morris recruited several other police officers to assist him in executing the search warrant. When the officers arrived at the defendant's residence, Deputy Virgil Miller and Trooper Larry Williams stationed themselves at the rear of the house for security purposes. The garden in which the mari-

juana was found was approximately thirty feet from the back of the house and the officers were standing in the yard somewhat closer to the garden than to the house. Trooper Williams testified that he was shining his flashlight into the garden area from where he stood on the lawn when he spotted what appeared to be marijuana plants. He then went into the garden area and examined the plants more closely. Deputy Miller testified that he was also positioned in the yard when he first saw what appeared to be marijuana plants. The State presented evidence that the plants ranged in size from three and one-half feet tall to over six feet tall and that approximately 4,000 plants were found in the garden.

 The law is clear that the police may not use an initially lawful search as a means to conduct a broad, warrantless search. See, e.g., *State v. Moore*, 165 W.Va. 837, 272 S.E.2d 804 (1980). Therefore, for the marijuana plants to have been legally seized from the garden, an exception to the warrant requirement must apply. In this case, we agree with the State's assertion that the "plain view" exception permitted seizure of the evidence. The requirements for the plain view exception to apply were stated in syllabus point 7 of *State v. Moore, supra:*

> A warrantless seizure of property in plain view is constitutionally permissible provided three requirements are met: '(1) the police must observe the evidence in plain sight without benefit of a search [without invading one's reasonable expectation of privacy], (2) the police must have a legal right to be where they are when they make the plain sight observation and, (3) the police must have probable cause to believe that the evidence seen constitutes contraband or fruits, instrumentalities or evidence of crime.' Syllabus Point 3, in part, *State v. Stone*, 165 W.Va. 266, 268 S.E.2d 50 (1980).

 We believe that these three requirements were met in the instant case. The marijuana plants were in plain sight from where the police officers were standing in the defendant's backyard. The observation of the plants clearly did not invade any reasonable expectation of privacy on the part of the defendant who grew the plants in a plainly visible area. The fact that Trooper Williams used a flashlight to see the plants does nothing to affect the propriety of the view. A flashlight merely provides at night what the sun does during the day. *See* 1 LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 2.2(b) (1978). *See also State v. Federici*, 179 Conn. 46, 425 A.2d 916 (1979). Next, the police officers had a legal right to be on the defendant's property and the two officers who found the plants in the garden had a valid purpose in being in the backyard, i.e., to maintain security during the search of the residence. Finally and obviously, the marijuana plants were evidence of a crime. Therefore, the plants fall under the "plain view" exception and the trial court properly admitted them into evidence.

## IV

 The defendant contends that the verdict form should have contained the lesser included offense of possession as to the manufacturing and cultivating charge against him. Defense witnesses testified at trial that they saw no marijuana growing in the garden. The evidence offered by the State tended to prove that there was a large quantity of marijuana plants growing in an area of approximately forty-three square feet, some plants as high as six feet tall. In syllabus point 2 of *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902 (1982), we held: "Where there is no evidentiary dispute or insufficiency on the elements of the greater offense which are different from the elements of the lesser included offense, then the defendant is not entitled to a lesser included offense instruction." There was no evidence in this case to support a verdict of a lesser included offense. Instructions must be based upon the evidence and an instruction which is not supported by the evidence should not be given. Syllabus Point 4, *State v. Collins*, 154 W.Va. 771, 180 S.E.2d 54 (1971).

Accordingly, the judgment of the Circuit Court of Webster County is affirmed.

Affirmed.