## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia**
**Plaintiff Below, Respondent**

**vs)  No. 14-1034** (Wood County 14-F-25)

**Michelle Curran**
**Defendant Below, Petitioner**

**FILED**

November 20, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Michelle Curran, by counsel Courtney L. Ahlborn, appeals the Circuit Court of Wood County's April 28, 2014, order denying her motion to suppress. Respondent State of West Virginia ("State"), by counsel Nic Dalton, filed a response in support of the circuit court's order. Petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2014, petitioner was indicted by the Wood County Grand Jury on eight felony charges, all related to the sale of controlled substances.[1] Petitioner's charges stem from an investigation undertaken by the Parkersburg Narcotics Task Force (PNTF) from August of 2012 to September of 2013. On August 26, 2012, a PNTF agent placed electronic monitoring equipment on a confidential informant to conduct a controlled buy (controlled purchase of controlled substances) inside petitioner's residence. Prior to arranging the controlled buy, the PNTF did not obtain the necessary electronic intercept warrant required by the West Virginia Wiretapping and Electronic Surveillance Act, West Virginia Code §§ 62-1D-1 through -16 or 62-1F-1. The confidential informant purchased cocaine from petitioner during the August 26, 2012, controlled buy.

---

[1]Counts one through four of the indictment charged petitioner with delivery of a controlled substance in violation of West Virginia Code § 60A-4-401(a)(i); counts five, six, and seven, charged petitioner with delivery of a controlled substance within 1000 feet of a public elementary school in violation of West Virginia Code §§ 60A-4-401(a)(i) and 60A-4-406; and count eight, charged petitioner with possession of a controlled substance with the intent to deliver in violation of West Virginia Code § 60A-4-401(a)(i).

1

On August 29, 2012, the PNTF applied for an electronic intercept warrant for petitioner's residence citing the August 26, 2012, purchase from petitioner. The warrant application was granted, but no additional controlled buys were made at petitioner's residence until October of 2012. On October 2, 2012, the PNTF requested a new electronic intercept warrant for petitioner's residence. In making the application for this warrant, the PNTF referenced the August 26, 2012, controlled buy, in addition to other facts as a basis for probable cause. The warrant application was granted and controlled buys were conducted at petitioner's residence on October 2, 2012, October 3, 2012, and October 9, 2012.

On March 23, 2013, PNTF requested another electronic intercept warrant for a controlled buy at petitioner's residence. In making the application for the March 23, 2013, warrant, the PNTF again cited the August 26, 2012, controlled buy as a partial basis for probable cause. The warrant was granted, and two additional controlled buys were completed at petitioner's residence on March 25, 2013, and April 1, 2013. By April 1, 2013, the PNTF was using a new confidential informant for its investigation of petitioner and, prior to that informant entering petitioner's residence to complete the controlled buy, a PNTF officer showed that informant (identified as 13-CI-009) a photograph of petitioner from the officer's phone.

On September 24, 2012, the PNTF made another application for an electronic intercept warrant requesting to conduct a controlled buy at petitioner's residence, and again, cited the August 26, 2012, controlled buy as part of the basis for probable cause for the warrant. This warrant was issued and the final controlled buy at petitioner's residence was completed on September 26, 2013. On September 27, 2013, the PNTF obtained a search warrant for petitioner's residence. Again, part of the basis in the affidavit for the probable cause for this warrant was the August 26, 2012, controlled buy. The search warrant was executed, and petitioner was arrested in conjunction with the execution of this warrant.

After indictment, on March 21, 2014, petitioner filed a motion to suppress all evidence obtained from the electronic intercept warrants, and the search warrant executed at her residence, as well as a motion to suppress the identification testimony of the confidential informant. A hearing was held on petitioner's motions on April 21, 2014. The circuit court denied petitioner's motions by order dated April 28, 2014. On April 29, 2014, petitioner entered a conditional guilty plea to one charge of delivery of a controlled substance. Petitioner now appeals the circuit court's April 28, 2014, order denying her motions to suppress.

On appeal, petitioner raises four assignments of error. In her first two assignments of error, petitioner argues the circuit court erred in denying her motions to suppress. In her first assignment of error, petitioner contends that the circuit court erred in finding that evidence obtained during the August 26, 2012, illegal search of her home could serve as probable cause for the issuance of subsequent valid orders authorizing electronic intercept and a search warrant at her residence.[2] In her second assignment of error, petitioner argues that the circuit court erred

---

[2]In this matter, four electronic intercept warrants were issued along with one search warrant. In ruling on petitioner's motion to suppress, the circuit court found that the audio recording made by the informant during the August 26, 2012, controlled buy (which was

2

in finding that the affidavits submitted in support of the requests for electronic intercept warrants and the search warrant for her residence contained sufficient probable cause.[3] Because of the interrelated nature of these assignments of error, we will address them together. We review such claims under the following standard of review:

> When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

Syl. Pt. 1, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996).

In *State v. Lilly*, 194 W.Va. 595, 600, 461 S.E.2d 101, 106 (1995), we explained that the standard of review of a circuit court's ruling on a motion to suppress is a two-tier standard:

> [W]e first review a circuit court's findings of fact when ruling on a motion to suppress evidence under the clearly erroneous standard. Second, we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action. Under the clearly erroneous standard, a circuit court's decision ordinarily will be affirmed unless it is unsupported by substantial evidence; based on an erroneous interpretation of applicable law; or, in light of the entire record, this Court is left with a firm and definite conviction that a mistake has been made. *See State v. Stuart,* 192 W.Va. 428, 452 S.E.2d 886, 891 (1994). When we review the denial of a motion to suppress, we consider the evidence in the light most favorable to the prosecution. (Footnotes omitted).

Petitioner argues that each of the affidavits attached to the applications for electronic intercept warrants for her residence (October 2, 2012, March 25, 2013, and September 24, 2013) and the search warrant for her residence (September 27, 2013) contained information obtained during the August 26, 2012, controlled buy completed inside petitioner's residence, which

---

completed without an electronic consent warrant) was obtained in violation of the Electronic Surveillance Act and was, therefore, not admissible evidence.

[3]In syllabus point four, in part, of *State v. Adkins*, 176 W.Va. 613, 346 S.E.2d 762 (1986), we held that probable cause must exist for the issuance of the warrant, and found that:

> the validity of an affidavit for a search warrant is to be judged by the totality of the information contained in it. Under this rule, a conclusory affidavit is not acceptable, nor is an affidavit based on hearsay acceptable unless there is a substantial basis for crediting the hearsay set out in the affidavit which can include the corroborative efforts of police officers.

petitioner contends was an illegal search.[4] Petitioner suggests that any subsequent electronic intercept warrants or search warrant obtained in this matter, after August 26, 2012, were based, in part, on improperly obtained evidence, and should have been suppressed as "fruit of the poisonous tree."[5]

Conversely, respondent argues that while the circuit court would not permit the PNTF to use the audio recordings from the August 26, 2012, controlled buy to obtain future warrants, the court recognized that on August 26, 2012, the informant was given consent to enter petitioner's residence (by petitioner) and made a drug transaction with petitioner therein, despite the improperly obtained audio recording. Thereafter, the informant reported observations about the drug transaction to police separate from audio recording. The circuit court specifically found that

> there is nothing . . . to indicate that it is improper for the State (or its agents) to find a cooperating individual that is willing to enter another's home, upon that resident's invitation, and observe certain transactions occurring therein and later reporting his or her observations to the State (or its agents) and potentially testifying in court as to these observations.

Respondent contends that petitioner's assertion that the lower court admitted or somehow permitted the use of illegally obtained audio recordings is simply misconstrued. The circuit court was clear in its order that the audio recordings from the August 26, 2012, controlled buy were not legally obtained and were, therefore, inadmissible. However, the circuit court specifically found that on August 26, 2012, petitioner invited the informant into her home, and sold the informant illegal drugs. The informant then reported the transaction to police and produced the illegal drugs, effectively providing evidence that petitioner was in fact selling drugs.

---

[4]The first electronic intercept warrant was issued on August 29, 2012. The second electronic intercept warrant was issued on October 2, 2012. Petitioner argued that the affidavit attached to the October 2, 2012, application for electronic intercept failed, as it lacked probable cause. As to the October 2, 2012, electronic intercept warrant, the investigating officer submitted an affidavit to a magistrate seeking a warrant to search petitioner using recorded audio. To support the findings of probable cause, the officer showed that the criminal informant had a track record of providing reliable information (having completed previous controlled buys). Further, the officer stated that the informant had been an eyewitness to petitioner's drug dealing, and had personally purchased drugs previously from petitioner. The officer also stated that the informant placed the criminal activity in the place to be searched, by showing him the residence of petitioner. As to the March 25, 2013, and September 24, 2013, electronic intercept warrants, the PNTF officer made similar proffers in their affidavits in support of the warrants (including the additional bolster of the October 2, 2012, controlled buy).

[5]In *State v. Stone*, 165 W.Va. 266, 268 S.E.2d 50 (1980), we recognized that under the fruits of the poisonous tree doctrine, evidence which is located by the police as a result of information and leads obtained from illegal conduct, constitutes the fruit of the poisonous tree, and is inadmissible as evidence.

In construing all the facts related to petitioner's first and second assignments of error in the light most favorable to the State, and giving particular deference to the circuit court's findings, we find that the circuit court did not clearly err in denying petitioner's motion to suppress evidence obtained during any of the controlled buys after August 26, 2012, or the evidence obtained following the execution of the search warrant for petitioner's residence.

As to petitioner's arguments regarding the affidavits for warrants made by the PNTF following the August 26, 2012, controlled buy, in *State v. White*, 167 W.Va. 374, 379, 280 S.E.2d 114, 118-19 (1981), we reasoned that

> [i]n testing the sufficiency of the affidavit here we note the Supreme Court's admonition that "[i]f the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a common sense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 108, [85 S.Ct. 741, 746, 13 L.Ed.2d 684] (1965). Similarly, "[a] policeman's affidavit should not be judged as an entry in an essay contest," *Spinelli v. United States*, 393 U.S. 410, 438, [89 S.Ct. 584, 600, 21 L.Ed.2d 637] (1969) (Fortas, J., dissenting); and *see United States v. Harris*, 403 U.S. 573, 577-79, [91 S.Ct. 2075, 2078-80, 29 L.Ed.2d 723] (1971); . . .

With these principles to guide us, we examine the affidavits. The affidavits tell us that on August 26, 2012, petitioner welcomed the informant into her residence, and then sold the informant drugs. After buying drugs, the informant returned to the officer outside petitioner's home. The officer personally observed that the informant no longer had the money he had been given by the officer immediately prior to the controlled buy, and that the informant was (post-controlled buy) in possession of a quantity of drugs (the informant had been searched by officers prior to the controlled buy to confirm the informant did not have any illegal narcotics in his possession). This first-hand information, when read in a "common sense and realistic fashion," does not reveal a mere allegation of suspicion and belief.[6] Rather, it provides a reasonable basis for a detached and neutral magistrate to believe there was probable cause to search the premises. As such, we again find that the circuit court did not err in denying petitioner's motion to suppress.

In her third assignment of error, petitioner contends that the orders authorizing electronic intercept and search warrants for petitioner's residence were issued in violation of petitioner's constitutional rights by a magistrate who failed to exercise independent judgment. In support of her argument, petitioner relies on syllabus point two, in part, of *State v. Dudick*, 158 W.Va. 629,

---

[6]We note our ruling in syllabus point one of *State v. White*, 167 W.Va. 374, 280 S.E.2d 114 (1981), that "a valid search warrant may issue upon an averment that an unnamed informant was an eyewitness to criminal activities conducted on the premises described in the warrant." The *White* Court further reasoned that "first-hand information [that] places criminal activity in the place mentioned and the fact that it is first-hand information makes it reliable." 167 W.Va. at 379, 280 S.E.2d at 119.

5

213 S.E.2d 458 (1975), in which this Court held "where it is conclusively provided that a magistrate acted as a mere agent of the prosecutorial process and failed to make an independent evaluation of the circumstances surrounding a request for a warrant, the warrant will be held invalid and the search will be held illegal."

Petitioner argues that the September 27, 2013, search warrant was improper, as the issuing magistrate was not impartial. The September 27, 2013, warrant was issued by Magistrate Waters. In 2012, Magistrate Waters's brother worked as a police officer for the City of Vienna, and was the officer who brought the confidential informant making the September 27, 2013, controlled buy to the PNTF. Given the familial relationship between the Magistrate and this officer, and the officer's involvement in handling the confidential informant, petitioner contends that it was not possible for Magistrate Waters to be impartial.

Petitioner additionally argues that the September 27, 2013, search warrant was not issued in compliance with West Virginia Code § 62-1A-3, that requires that such warrants "shall state the grounds or probable cause for its issuance and the names of the person whose affidavits have been taken in support thereof." In this case, the search warrant simply states "[s]ee affidavit" as the grounds for probable cause. Petitioner contends that the fact that the warrant itself does not state the particular grounds for probable cause is further support that there was no independent determination of probable cause made by the magistrate.

Respondent cites *State v. Ramsey*, 209 W.Va. 248, 254, 545 S.E.2d 853, 858 (2000), in which this Court refused to "go behind the thought process of a judge or magistrate." Instead, we reasoned that

> [w]e depend, rather, upon the affidavit in support of the search warrant which is usually the only available evidence of the facts and circumstances justifying the issuance of the warrant. We will only go beyond the warrant affidavit to examine the thought process of the magistrate "when other evidence conclusively demonstrates that a magistrate is so influenced by the police that he becomes a mere agent of the prosecution[.]"

Respondent argues that the instant case is analogous to the *Ramsey* case, in that there is nothing more than a naked assertion that the magistrate failed to exercise independent judgment. Petitioner failed to proffer any evidence that the magistrate failed to exercise independent judgment, aside from the testimony of a PNTF officer that the PNTF prepares all documentation associated with the application for warrants. Further, respondent disputes petitioner's contention that Magistrate Waters was impartial in issuing a warrant in this matter simply because her police officer brother talked to the confidential informant referenced in the warrant application. Respondent notes that petitioner fails to cite any law in support of her claims.

In *State ex rel. Brown v. Dietrick*, 191 W.Va. 169, 444 S.E.2d 47 (1994), an allegation was made that a magistrate was impartial for issuing a warrant because she was married to the police chief and one of his officers obtained a warrant. This Court refused to find the warrant was issued improperly on these facts. Instead, this Court reasoned that "there was no evidence to show any actual bias or partiality on the part of [the magistrate]. The entire argument centered on

an implied partiality because of the magistrate's relationship to [the police chief]." We specifically noted that "the fact that a magistrate's spouse is the chief of police of a small police force does not automatically disqualify the magistrate, who is otherwise neutral and detached, from issuing a warrant sought by another member of such police force."

In this case, based upon our review of the record herein, we find that Magistrate Water's brother did not request the warrant and his name did not appear on any affidavit or the warrant itself. Further, Magistrate Waters's brother was not a part of the execution of any of the electronic consent warrants or the search warrant.

Finally, respondent addresses petitioner's argument that the search warrant was void because it did not contain the grounds for probable cause for the issuance of the warrant (as is required by West Virginia Code § 62-1A-3), because the warrant simply said "See affidavit." In *State v. Hall*, 171 W.Va. 212, 218, 298 S.E.2d 246, 251 (1982), accusations were made that a warrant was defective because the "items seized were not sufficiently described in the warrant." In *Hall*, we ruled that "property to be seized must be described within the warrant itself or within the sworn complaint expressly made a part of the warrant by direct reference thereto." 171 W.Va. at 213, 298 S.E.2d at 246. In the instant case, the warrant makes clear reference to the affidavit, which sets forth the grounds for probable cause. Accordingly, we find the same is proper.

Petitioner's final assignment of error is that the circuit court erred in denying petitioner's motion to suppress the identification testimony of a confidential informant. Petitioner cites *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967 (1968), in which the United States Supreme Court ruled that due process principles prohibit the admission at trial of an out-of-court identification obtained through procedures so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. In this case, the confidential informant was shown a single photograph of petitioner (on the officer's cell phone), several hours before the August 26, 2012, controlled buy, at which time the informant identified the petitioner. On October 2, 2012, following the controlled buy, the confidential informant was shown a photo lineup, in which the informant identified petitioner as the individual who sold the informant illegal drugs during the controlled buy.

Petitioner contends that once the single photograph of petitioner was shown to the informant, the suggestion of who the petitioner was and who to identify cannot be undone and is impermissibly suggestive. Accordingly, petitioner contends that the circuit court erred in denying her motion regarding the identification testimony of the confidential informant.

Respondent also references the *Simmons* case, in which the United States Supreme Court reasoned that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. In the instant case, the confidential informant was shown a photo of petitioner (from the cell phone of the investigating officer) prior to entering her home to make the controlled buy. Later, right before the second controlled buy in October 2012, the same informant was shown a photo lineup, which included an image of petitioner. The

informant identified petitioner in the lineup, and then entered petitioner's home and bought drugs for the second time.

Respondent distinguishes the instant case from the *Simmons* case. Unlike *Simmons*, in the instant case, there was no chance of the informant making a misidentification of petitioner. The informant knew the petitioner, where she lived, her nickname, and had purchased drugs from her in the past. Hence, there was no chance of a misidentification. We agree with respondent. Given the particular circumstances of this case, we find no error with the circuit court's denial of petitioner's motion to suppress the informant's identification testimony.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 20, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II